The principal question to be settled in this case is, whether the parties have so contracted as to have fixed the amount of damages to be recovered of the defendants, in case of non-performance by Charles B. Peddie. Although the courts have uniformly conceded to parties the right to fix the amount of damages in advance of the breach of the contract, and at any sum, however disproportioned to the real damages, they shall see fit, and have likewise conceded that it is a question of intention, to be derived from the scope and tenor of the agreement, yet, when the judicial mind has acted upon this class of cases, it is evident how repugnant it has been to enforce them according to the plainly expressed language of the contracting parties. Hence have sprung up a series of artificial rules peculiar to contracts of this character, which, while they ostensibly profess to comply with the fundamental canons of construction appertaining to the legal science, contrive to contravene them by artificial distinctions and limitations. I will repeat some of the rules found in the books: First. The language of the agreement is not conclusive, and the effort of the court is to learn the intent of the parties. Hence the term "liquidated damages" is not sufficient to control the construction, if the court can discover in the other parts of the instrument reason even to doubt as to the intention of the parties; Second. Where the word penalty is used it is generally conclusive against its being held liquidated damages, however strong the language of other parts of the instrument in favor of such construction; Third. If the sum stipulated is to be paid on the non-payment of a less sum which is certain in amount (or, as some judges say, can be easily ascertained by a jury), and made payable by the same instrument, then it will be treated as a penalty; Fourth. When the agreement is in the alternative to do an act or pay a given sum of money, the court will hold the party failing to have had his election, and compel him to pay the money; Fifth. If the sum be evidently fixed to evade the usury laws, or any *Page 472 
other statutory laws, or to cloak oppression, the court will relieve by treating it as a penalty; Sixth. If, independently of the stipulated damages, the damages would be wholly uncertain and incapable of being ascertained except by conjecture, in such case the damages will be considered liquidated if they are so denominated in the instrument; Seventh. If the language of the parties evince a clear and undoubted intention to fix the sum mentioned as liquidated damages in case of default of performance of some act agreed to be done, then the court will enforce the contract, if legal in other respects.
The language of the instrument declared on is clear and distinct in denominating the $3000 liquidated damages, and expressly negatives the idea of its being inserted as a penalty. This occurs in that part of the bond where the penal sum is usually inserted, and the same language denominating it liquidated damages is repeated at the close of the condition of the bond. The word penalty is not used in the instrument, nor any other word of a similar import. The language of the instrument is unambiguous; and, according to the usual rules of construction, the duty of interpretation is not imposed upon the court. But the rules applied to such agreements are peculiar, and it is necessary to see whether the case falls within any of the rules above given, which will enable us to declare the sum denominated liquidated damages, and not a penalty, a mere penalty nevertheless.
The court below thought some of the covenants such that the damages for their breach could be readily ascertained by a jury; for instance, the covenant against wrongfully detaining the plaintiff's moneys or property, and that requiring Peddie to give a true account of the things committed to his management.
I propose to look into those cases where it has been held that, where the damages are certain, the sum mentioned as liquidated damages may be held as a penalty only, in order to see whether they were as uncertain as in this case. *Page 473 
 Spear v. Smith (1 Denio, 464) was on an agreement to arbitrate. By the submission, the defendant agreed to give up to the plaintiff the possession of certain property, and the arbitrators were to decide what damages either party was to have in consequence of the non-fulfillment of the contract concerning it and other matters. The submission contained the following clause: "I, the said Moses Smith, agree to pay to said W.M. Spear the sum of one hundred dollars, as the ascertained and liquidated damages, if I shall refuse to abide the arbitrator's decision; and I, the said Wm. M. Spear, agree to pay the like sum to said Smith, as ascertained and liquidated damages, if I shall refuse to abide such decision." The arbitrators awarded that the defendant should pay the plaintiff $10.40 by a specified day, which he failed to pay, and he also failed to give possession of the property in pursuance of the agreement. The Supreme Court held that the sum to be paid was fixed by the arbitrators, with interest, and being thus easily ascertained, the $100 must be regarded as a penalty.
Kemble v. Farren (6 Bing., 141) was an action by the manager against an actor for a violation of an agreement to perform at Covent Garden for four years. The plaintiff agreed to pay defendant £ 3 6s. 8d. every night the theatre should be open, and a benefit night during each season. The agreement contained a clause that if either of the parties should neglect or refuse to fulfill the said agreement or any part thereof, or any stipulation therein contained, such party should pay to the other £ 1000 liquidated damages, and not a penalty or penal sum, or in the nature thereof. The breach was the defendant's refusal to act during the second season; and one question was, whether this was a case of liquidated damages, and it was held not to be, because the agreed damages applied to a breach of the agreement to pay a certain sum (£ 3 6s. 8d. a day to defendant), as well as to covenants where the damages were uncertain; therefore, as it could not be considered otherwise than as a penalty, as to such *Page 474 
fixed sum, it must also be construed in the same way in respect to those covenants of which the breach would result in uncertain damages; and it was likewise in this respect in the case ofAstley v. Weldon (2 Bos. Pul., 346).
The case of Davies v. Penton (6 Barn. Cress., 216) seems to have been decided not to be a case of liquidated damages on two grounds: First. Because the words penalty and liquidated damages were both used, and therefore brought the case within the second rule above mentioned; and Second. Because the greater sum was inserted to secure the payment of a less fixed sum agreed to be paid in the same instrument.
The above cases will serve to illustrate the kind of certainty as to the sum to be paid as damages for breach of an agreement in order to hold the larger sum agreed to be paid on such breach a mere penalty. They are cases where the lesser sum is named specifically in the instrument itself, or depends on the award of arbitrators. These and similar cases are the cases of certain damages to which the courts allude in the third rule.
We will now contrast with the above cases those falling within the sixth rule, where the damages are uncertain. Dakin v.Williams (17 Wend., 447) was a case where the defendant sold the plaintiff a printing press and the goodwill of the business for $3500, and the defendant agreed not to carry on the business in the county of Oneida, and fixed and liquidated $3000 as the damages if he violated that provision. This was held to liquidate the damages, because the real damage was uncertain, and the intent of the parties clear to fix the damages. So, in Knapp v.Maltby (13 Wend., 587), it was held that the damages for not assigning a lease to the plaintiff were of uncertain character, and would support an agreement for liquidated damages. So inPrice v. Green (16 Mees. Wells., 346), it was held that where the defendant agreed not to carry on the business of perfumery in London, the damages were *Page 475 
uncertain within the rule. So in Galsworthy v. Strutt (1Wels., Hurl. Gord. Excheq. R., 659), where one attorney agreed with another not to carry on the business of an attorney within fifty miles, nor interfere with or solicit the clients of the late co-partnership, it was held a case of uncertain damages.
The case at bar seems to me to fall within the sixth rule, the damages being wholly uncertain and depending entirely on proofaliunde the instrument declared on.
The plaintiff was a gold pen manufacturer, and would probably have to intrust those whom he took into his employ with the secrets of his trade and the materials used therein; and it would be difficult to prove the actual damage he would sustain by their leaving his employ, revealing the secret to others, or embezzling his materials. It was to guard against these contingencies that he required the defendant to give the bond in suit, with stipulated damages, in order to supersede proof in case of breach of any of its provisions. From the nature of the employment it would be difficult to prove how much money the person employed would or might detain, or how much of the materials he might refuse to give an account of. The damages to result from a breach of any of the stipulations of the agreement being uncertain and conjectural, I hold the case one of liquidated damages, and the judgment should therefore be reversed, and a new trial awarded in the court below.