CASE 13—ACTION BY COMMONWEALTH OF KENTUCKY AGAINST GINN &
Co., &c., ON A BOND—MAY 31.

# Commonwealth v. Ginn & Co., &c.

### APPEAL FROM GARRARD CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.   REVERSED.

PLEADING—MOTION TO MAKE MORE SPECIFIC—SCHOOLS—CONSTRUCTION
OF BOND EXECUTED BY PUBLISHERS OF TEXT BOOKS—LIQUIDATED
DAMAGES.

Held:   1. Where the publishers of school text-books executed bond
to the Commonwealth .undertaking that the price charged by
them to the school children of Kentucky for their books in
counties in which they might be adopted should not exceed the
lowest price charged by them for said books "in any State or
section of the country," the selling of such books either in or
to another State at a lower price than that charged to the school
children in counties of Kentucky in the schools of which they
had been adopted was a breach of the bond, and therefore a
petition alleging that the principals in the bond had sold such
books "in or to the State of Indiana" at a certain price, which
was lower than that charged in a certain county in Kentucky in
the schools of which such books had been adopted, was good on
demurrer, the remedy on account of the indefiniteness of the
pleading being a motion to make it more specific.
2. Though the bond stipulates that the retail price of such books
in Kentucky shall not exceed the lowest "retail" price fixed by
the principals for such books "in any State or section of the
country," yet, as the obligors also undertake that the princi-
pals shall comply with all the requirements of certain sec-
tions of the common-school law, now Kentucky Statutes, sec-
tions 4423, 4424, and those sections require that it shall be dis-
tinctly set forth in such bonds that the retail price of such books
in any county in which they may be adopted shall not exceed
"the lowest wholesale or the lowest retail list price" fixed by
the principals for the sale of such text-books "in any State or
section of the country," the selling of the books in any other
State or section of the country, either at wholesale or retail, at
a lower price than that charged to the school children of Ken-
tucky in the counties in the schools of which such books are
adopted, is a breach of the bond.

3. Under Kentucky Statutes, section 4423, providing that a copy of the bond executed by any publisher or person selling school text-books shall be forwarded to each county superintendent of schools, and that, when there is a breach of the bond in any county, the superintendent of such county "shall bring suit in the circuit court of his county for a forfeiture of said bond," but one action can be had on the bond, and the full sum of $10,000, named in the bond as "agreed liquidated damages," will inure to the benefit of the county whose superintendent first institutes the action for its recovery.

4. The amount named in a bond as liquidated damages for its breach will be treated as such if the damages resulting would be very uncertain, and evidence of their amount difficult to obtain, and the fair import of the agreement is that the amount fixed is agreed on to avoid the expense and difficulty of proving actual damage, and the amount is not out of proportion to the actual cash damage.

5. Under Kentucky Statutes, section 448, providing that an act required to be done by three or more persons shall be deemed the act of all when done by a majority of them, a bond required to be approved by the members of the State board of education, three in number, is valid when approved by two of them.

6. Under Kentucky Statutes, section 4541, providing that "the secretary of State, with the assent of the governor, may appoint an assistant secretary, who, in case of absence or indisposition of the principal, may do the business of his office in his name," the duty of approving a bond which the secretary of State is required to perform as an *ex officio* member of the State board of education may be performed by his assistant when he is absent or indisposed; and, where the assistant has assumed to perform such a duty, it will be presumed, until the contrary appears, that the principal was absent, or indisposed.

JUDGES BURNAM AND DuRELLE DISSENT.

J. H. M'MURTRY, LEWIS L. WALKER AND WELCH & WILLIAMS, FOR APPELLANT.

The Legislature had in mind the best interests of the common schools when it enacted the statutes under which this suit was instituted,—to protect the children of the public schools of Kentucky, many of them very poor, from the greed of powerful publishing houses and book trusts.

The bond sued on was executed to the Commonwealth of Kentucky by Ginn & Co., publishers of school text books, and

we maintain that Elisa Jane Lusk, as county superintendent of common schools of Garrard county, ought to recover thereon $10,000, the amount fixed by the bond as "agreed liquidated damages."

The bond recites: "This bond is executed in conformity with the requirements of sections 61 and 62 of the common-school law, and the undersigned principal and sureties agree and undertake that said principal shall comply with all the requirements of said sections with respect to the publishers or persons selling text books adopted by any county in this State." Said sections 61 and 62 are found in the Kentucky Statutes numbered 4423 and 4424. The language of the bond makes these sections a part of the bond, and in construing the bond these sections must be considered as incorporated therein, and these sections provide that "the text books shall be sold to the patrons and pupils of the common schools in which same may be adopted at a special retail list price, which shall not exceed the lowest wholesale or the lowest retail list price then, or that may thereafter be fixed by said publisher or person selling such text books in any State or section of the country."

The bond further recites: "The party of the first part hereby binds himself, or itself, to pay to the party of the second part ten thousand dollars as *agreed liquidated damages* for any violation thereof."

The petition alleges that the price charged by Ginn & Co. in this State for "Montgomery's Leading Facts of American History," published and sold by said company as a text book for schools, is one dollar per volume, while the same book of the same "make-up" is being sold by said company in Indiana at 65 cents per volume. Section 4423 provides that "when there is a breach of said bond, the county school superintendent shall bring suit in the circuit court of his county for the forfeiture of said bond, and any money recovered thereon, after paying the cost of the proceeding, shall be covered into the school fund of the county."

The court will find that the allegations of the petition are sufficient to authorize a recovery and the court erred in sustaining a demurrer thereto.

## AUTHORITIES CITED.

Ky. Stats., sec. 4423, 4424; Vol. 2 Am. & Eng. Ency. of Law, (1st Ed.), pages 461, 462; Vol. 4 (2d Ed.), same, page 655 and note; Vol. 13 (1st Ed.), same, pages 852 and 854, and notes.

BECKNER AND JOUETT, FOR APPELLEES.

We insist that the judgment appealed from should be affirmed, because:

1. There is no sufficient breach of the bond sued on. The petition must be construed most strongly against the pleader, and in this case it is not alleged that Ginn & Co. had sold "Montgomery's Leading Facts of American History" as a text book, or to the pupils or patrons of any common school in any other State or county at a retail price of less than one dollar. This is what they undertook not to do in the bond under consideration.

2. The sum of $10,000 mentioned in the bond is a penalty to secure its performance, not to one but to all the various counties of the State, and should be apportioned, in case of breach to the loss actually sustained.

3. The bond sued on was not executed as the law required, and is therefore invalid as to the parties before the court.

### AUTHORITIES CITED.

Ky. Stats., 4424; Ky Stats., 4423; Civil Code, 18; Bell v. Truit, 9 Bush, 258; Schute v. Taylor, 5 Met. (Mass.) 61; E. & P. R. R. Co. v. Geoghegan, 9 Bush, 59; Applegate v. Jacoby, 9 Dana, 206; Sedgwick on Meas. of Dam., 422; Delaney v. Trustees Cin. So. R'y, 5 Ky. Law Rep., 853; Louisville Water Co v. Youngstown, 16 Ky. Law Rep., 350; Hahn v. Horstman, 12 Bush, 257; Am. & Eng. Ency. of Law, Vol. 13, p. 854; Sedgwick on Damages, 406-410; Condor v. Kemper, 13 Am. Law Rep., 674; Moore v. Rathburn, 97 Am. Dec., 59; Long v. Towe, 97 Am. Dec., 355; Foley v. McKeegin, 66 Am. Dec., 107; Note to 1st Am. Dec., 331 to 340; 1 Sutherland on Damages, 490; 1 Pom. Eq. Juris., 444; 3 Parsons on Cont., 156; Ky. Stats., 4377; Ky. Stats., 4379; Ky. Stats., 4541; Hardin v. Owings, 1 Bibb., 214; Commonwealth v. Williams, 14 Bush, 302; Lothrop v. Blake, 3 Pa., 483; McKenzie v. Jackson, 82 Ga., 80; Gibbons v. Pickett, 19 Law. An. Rep., 177 (notes).

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This suit was brought in the Garrard circuit court in the name of the Commonwealth of Kentucky and Elisa Jennings Lusk, as county superintendent of common schools of Garrard county, Ky., plaintiffs, against Ginn & Co., publishers of school text-books, whose principal

place of business is at Boston, Mass., and H. C. Reid, H. N. Beauchamp, and Geo. Price, defendants. Appellant, Elisa Jennings Lusk, is the superintendent of public schools of Garrard county, and as such appointed a county board of examiners, as required by the statute, all of whom were qualified, and acting in their respective capacities. As such board, it devolved upon them, under section 4423 of the Kentucky Statutes, to adopt a list of text-books on the subjects taught in the common schools for a period of five years, and they did adopt the text-book hereinafter mentioned. Previous thereto, Ginn & Co., desiring the adoption in the counties of Kentucky of the text-books used in the common schools, and published by them, filed in the office of the superintendent of public instruction a sample copy of such books, together with a list of the retail prices at which they should be sold to the patrons and pupils of any county in which said text-books might be adopted. On the list of books so furnished was a history of the United States by D. H. Montgomery, entitled "Montgomery's Leading Facts of American History." With the said list of books, it is alleged, said Ginn & Co., with appellees Reid, Beauchamp, and Price as their sureties, executed a bond to the Commonwealth of Kentucky on the 10th day of October, 1896, the material parts of which, so far as this case is concerned, are as follows:

"This covenant and bond this day entered into by and between Ginn & Co., a publisher of school text-books, and a dealer therein, desiring to have same adopted for use in the common schools of the Commonwealth of Kentucky, of the first part, and the Commonwealth of Kentucky, of the second part, acting through the *ex officio* members of the State board of education of Kentucky,

which, as now constituted, is composed of W. J. David-son, superintendent of public instruction, W. S. Taylor, attorney general, and Charles Finley, secretary of State, witnesseth:     That, whereas, the party of the first part has filed in the office of the superintendent of public in-struction sample copies of the following text-books in-tended for adoption by the counties of this State, togeth-er with the lowest wholesale list price at which same shall be sold to the trade, and the lowest retail list price at which same shall be sold to the patrons and pupils of the common schools in any county adopting same, which list is as follows, to-wit:

|  | Wholesale Price. | Retail Price. |
|---|---|---|
| Montgomery's Leading Facts of Amer-ican History........................ | $1 00 | $1 00 |

"Now, therefore, the party of the first part hereby binds himself or itself to pay to the party of the second part ten thousand dollars ($10,000.00) as agreed liquidated damages on the adoption of any or all of his said school text-books herein listed by any county of this State, on condition following, viz.:   (1) That the retail price of any of said books sold to the patrons or pupils of any common school in any county adopting same shall not exceed the lowest retail price now or hereafter fixed by said party of the first part for the sale of said text-books in any State or section of the country."

Other conditions were stated which should constitute a breach of the covenant, but which are not material to be here inserted.     The bond continued: "This bond is executed in conformity with the requirements of sections 61 and 62 of the common-school law [Acts 1891-93, c. 260], and the undersigned principal and sure-

ties agree and undertake that said principal shall comply
with all the requirements of said sections with respect to
the publishers or persons selling text-books adopted by any
county in this State."

It is alleged in the petition as amended that this bond
was "executed by the defendants in this action before the
*ex officio* members of the State board of education of Ken-
tucky, whose names are stated in the original petition."
The breach of the bond is alleged in this:    That Ginn &
Co. have, since its execution, and since the adoption there-
of by the board of education of Garrard county, sold, and
are now selling, said Montgomery's Leading Facts of
American History in other States or sections of country
at less than one dollar per copy; "in or to the State of
Indiana it was sold at 65 cents per copy, and said price
is printed on the cover of the books;" and that said Ginn
& Co. required and compelled local dealers in Garrard
county to sell said text-books to the patrons and pupils
of the Garrard county common schools at one dollar per
copy, while in Indiana the same book is sold at only sixty-
five cents.    It is further alleged that the book mentioned
is the same book in matter, paper, binding, typography,
and general make-up as sold in Indiana and other sections
of the country as before stated.    The plaintiffs, alleg-
ing the breaches of the bond above set out, claim that
they were entitled to the recovery of the agreed liquidated
damages named in the bond, to be covered into the com-
mon-school fund of Garrard county, Ky.    The    circuit
court sustained a demurrer to this petition.    Plaintiffs
failing to plead further, it was dismissed, with judgment
for defendants' costs.

Motions were made by the defendants, and sustained by
the court, striking out certain allegations of the petition,

which, in view of the conclusions at which we have arrived and hereinafter stated, should have been overruled; for, in our opinion, the petition sufficiently alleges that the maximum wholesale and retail list price fixed by Ginn & Co. for the book in question, and sold to dealers and patrons in Kentucky, was one dollar, and that it was further sufficiently alleged that the same publisher is selling the same book in or to the State of Indiana at sixty-five cents per copy. The criticism is made by appellees that the statement last mentioned is in the disjunctive, and, is, therefore, not good pleading in a petition. If that be so, then the better practice was a motion to make more definite, as the offense against appellee's contract was committed by selling the text-book either in the State of Indiana or selling it to the State of Indiana at a less price than that sold to the school children of Kentucky in such counties as had adopted it under the provisions of sections 4423, *supra*.

It is further argued by appellees that the petition does not state whether the sales of books are for the purpose of being used as text-books, or whether they were sold at retail or wholesale, it being argued that the covenant of the bond was that the book should not be sold in any other State or section of country at a greater price at retail than the price fixed for Kentucky. However, it will be observed that the wording of the bond sued on is to this effect: "This bond is executed in conformity with the requirements of sections 61 and 62 of the common-school law, and the undersigned principal and sureties agree and undertake that said principal shall comply with all the requirements of said sections with respect to the publishers or persons selling text-books adopted by any county in this State." This we construe

to bring within the undertaking of the obligors in the
bond every act required of the publisher by the sections
referred to.    It is further alleged that sections 61
and 62 of the common-school law, referred to in
that bond, are sections 4423 and 4424 of the Kentucky
Statutes compiled by Carroll.    In section 4424 it is pro-
vided with reference to said bond:    "That it shall be dis-
tinctly set forth in said bond that the text-books of said
publisher or person selling the same shall be sold to the
patrons and pupils of the common schools of any county
in which the same may be adopted at a special retail
list price which shall not exceed the lowest wholesale or
the lowest retail list price then, or that may thereafter be,
fixed by said publisher, or persons selling the same, for
the sale of such text-books in any State or section of the
country, and that said special retail list price shall not,
at any time, exceed the price fixed and filed in the office of
the superintendent of public instruction, which shall be
set forth in said bond."    It is argued for appellee that
it was not contemplated by the contract sued on that the
wholesale price of any other State should be the criterion
of charge for the book in question when sold to the school
children of Kentucky, but, on the contrary, it was only
the retail price that was to be considered.    This conten-
tion is contrary to the plain language of the statute, nor
do we apprehend that it is within its contemplated mean-
ing; for it is a fact of common knowledge that some of
the States of the Union, and, we believe, the State of In-
diana, buy the text-books used in their schools, and fur-
nish them to their school pupils.    It was the evident
purpose of the Legislature of Kentucky to provide for
the supplying of the school children of Kentucky with
proper text-books at certainly not a greater price than the

same books were furnished to the school children of other States. It can not be material whether the books are paid for by the State or by the patrons of the schools, for the question is, what shall be the cost of the books to the pupils using them? Manifestly, this cost must have been the same whether it was paid by the State by wholesale or paid by the patrons of the school by retail. Therefore we conclude that the allegations of the petition on this subject were sufficient.

Another questions raised by the motions to strike, and the demurrer, was, whether the $10,000 could be recovered by the superintendent of Garrard county without reference to the specific damage that may be shown to have been suffered by the school patrons of that county on account of the acts alleged in the petition. Section 4424 of Kentucky Statutes, in part, reads as follows: "Whenever any publisher or person selling textbooks, who desires to have his text-book adopted in the common schools in any county in this State, shall file in the office of the superintendent of public instruction a sample copy of each of the text-books intended for adoption, together with the lowest retail list price at which the same shall be sold to the patrons and pupils of any county in which the same may be adopted, and shall execute bond before the *ex officio* members of the State board of education in the sum of ten thousand ($10,000) dollars, with good security resident in this State, it shall be the duty of said *ex officio* members of the said board of education to accept and file said bond in the office of the superintendent of public instruction. . . . Within ten days after the acceptance and filing in his office the bond herein, provided for, the superintendent of public instruction shall forward a certified copy thereof to each.

county superintendent in the State." Section 4423 provides in part: "It shall be the duty of the county superintendent to make and keep a record of the adoption of textbooks, and to see that the adopted list of text-books is established and maintained in all the public schools in the county; and it shall be the further duty of the county superintendent to file and keep in his office the copy of the bond of any publisher or person selling text-books before the *ex officio* members of the State board of education, and forwarded to him by the superintendent of public instruction; and when any of the books named in said bond shall be adopted for use in his county, and there is a breach of, or failure to comply with, any of the provisions of the bond in his county by the parties executing the same, he shall bring suit in the circuit court of his county for a forfeiture of said bond, and any money recovered thereon, after paying the cost of proceedings, shall be covered into the school fund of the county." It is not clear from the language whether the expression, "he shall bring suit in the circuit court of his county for a forfeiture of said bond," means that there shall be but one action on the bond, or whether the expression, "and any money recovered thereon," would imply that less than $10,000, the full penal sum mentioned, might be recovered according to the particular facts of the case, and numerous actions on the bond allowed. These sections have not heretofore been construed by this court with respect to this question; but it seems that the State officials, whose duty it was then to give them construction, did construe them to mean that but one action could be had on the bond, and that the full penal sum would inure to the benefit of the county whose superintendent first instituted the action to recover it. It

Commonwealth v. Ginn & Co., &c.

will be noticed, the language of the undertaking is, "Now, therefore, the party of the first part binds himself or itself to pay to the party of the second part ten thousand dollars ($10,000) as agreed liquidated damages." etc.    The bond further provides: "Now, the conditions of this bond are understood to be such that, if the party of the first part shall violate any of the foregoing conditions, or fail to comply with any of the provisions of the bond in honor and in good faith in selling any book, or in the conducting of his business at the office of the party of the first part, or in any county adopting any one or more of its books, then this bond shall be valid and binding, and the same shall be paid to the county superintendent of such county where the violation occurs, or where any person suffering from any violation of its condition resides, for the use and benefit of the school fund of the common schools of said county; otherwise, to be null and void." Much force is due to be given the construction placed upon these sections by the executive officers of the State whose official duty it was to construe and apply them; for it will be observed by an inspection of the statute that publishers or persons selling text-books might, without number, comply with the terms of the section, and that thereupon it would fall to the choice of the various counties of the Commonwealth to select, through their local boards of education, which of the text-books of such complying publishers they would adopt. So, if but one publisher complied with the law as to the filing of the price lists and execution of the bond, then every county in the State would be compelled ultimately to adopt his books as the standard.    Therefore, if such publisher should favor other States and sections of country by providing their school children with the same books at a less

rate than that fixed in the Kentucky list, the damage would be to all the patrons of the common schools of Kentucky, and would be extremely difficult to ascertain, as well as involve a great number of suits, and placing the matter of recovery at such an insignificant figure, comparatively, in each county, as would not furnish sufficient inducement, perhaps, to make the local authorities vigilant in looking after the interest of the patrons in this respect. Therefore, the parties have contracted in this case for the payment of one sum—$10,000 —as liquidated damage to the Commonwealth of Kentucky for any breach of this bond, and the parties have agreed, and the Commonwealth has elected, that this penal sum, instead of being distributed among many, shall be given to the common-school fund of that county whose superintendent shall first discover the breach of the bond, and successfully maintained his action to enforce the payment of the damages. Of course, calling a sum liquidated damages does not of itself make the amount actually liquidated. The true rule may be stated to be, where the damages resulting from the breach of an agreement would be very uncertain, and evidence of their amount very difficult to obtain, and the fair import of the agreement is that the amount of the money in it is specified and agreed on to save expense and avoid the difficulty of proving an actual damage, and is not out of proportion to the actual damages, it will be regarded as liquidated damages. Bagley v. Peddie, 16 N. Y., 469, (69 Am. Dec., 713), and cases cited. In Bagley v. Peddie, supra, it is laid down as the general rule that it is a question of construction, to be decided according to the intention of the parties at the time of the agreement, as to whether the sum named in the contract to be paid upon its breach by the

one failing is liquidated damages, or merely a penalty. We are of the opinion that, if the plaintiff is shown to be entitled to recover in this case, she is entitled to re-cover for the benefit of the common-school fund of Gar-rard county the full sum fixed in the bond, and that, consequently but one successful action can be maintained on it.

Another question presented in argument is, the bond, a copy of which is filed with the petition, shows that it was "examined and approved in accordance with section 62, Common School Law, October 20th, 1896. [Signed] W. J. Davidson, superintendent of public in-struction. E. D. Guffy, assistant secretary of State." By section 4377, Kentucky Statutes, the superintendent of public instruction, together with the secretary of State and attorney general, shall constitute the "State board of education," and by section 4379 the superintendent is made its chairman, with power to call meetings of the board, of which all the members shall have timely notice in writing. It appears that but two members of the board acted, if the assistant secretary of State was authorized to act as a member of it. Under section 448, Kentucky Statutes, where an act is required to be done by three or more, when done by a majority of them, it will be deemed the act of all. Section 4541 Id., provides: "The sec-retary of State, with the assent of the governor, may ap-point an assistant secretary, who, in case of absence or indisposition of the principal, may do the business of his office in his name, and the secretary shall be responsi-ble for the acts of such assistant, who, before he acts un-der such appointment, must take the oath prescribed by the Constitution." Thus, it will be seen, any official duty required of the secretary of State may be performed

by his assistant, in the absence or indisposition of the principal. It must be presumed when the assistant secretary of State, who acts under oath, affects to officiate in his official capacity, that his principal is either absent or indisposed. Of course, it is permissible to rebut such presumption upon proper allegation and proof. It being alleged in the petition and amended petition that the bond sued on was accepted and approved by the State board if education, that averment will be held sufficient; and that it was not so approved; or that the secretary of State was present, or not indisposed; or that the board had not notice in writing, signed by the chairman,—are all matters of defense, and can not be considered upon demurrer to the petition. The judgment is reversed, and cause remanded, with direction to the lower court to overrule the demurrer, and set aside the orders striking out parts of the petition, and to overrule these motions, and for proceedings consistent with this opinion.

Whole court sitting. Judge Burnam dissents, and Judges DuRelle and Hobson dissent from so much as holds that $10,000 may be recovered as liquidated damages.

Petition by appellee for rehearing and for modification of opinion, overruled.